IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JANET ADKISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:08cv99-CSC |
| ) | |
| SIKORSKY AIRCRAFT CORP., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Plaintiff Janet Adkison ("Adkison"), a white female, alleges a violation of 42 U.S.C. § 1981 against her prospective employer, Sikorsky Aircraft Corporation ("Sikorsky"). Adkison contends that she was discriminated against when she was dismissed from a mandatory pre-employment training program because of her relationship with an African-American man. Adkison seeks compensatory damages, punitive damages, and attorney's fees.

The court has jurisdiction of this claim pursuant to 28 U.S.C. § 1331 and § 1343. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

This action is now pending before the court on Sikorsky's motion for summary judgment. Adkison has filed a response in opposition to the motion. The court has carefully

reviewed the defendant's motion, the briefs filed in support of and in opposition to the motion, and the supporting and opposing evidentiary materials. Based on that review, the court concludes that Sikorsky's motion for summary judgment should be granted.

## II. THE SUMMARY JUDGMENT STANDARD

Under FED.R.CIV.P. 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at

---

[1] In *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), the court stated:

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial . . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves . . .

322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also* FED.R.CIV.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995); *Peppers v. Coates*, 887 F.2d 1493 (11th Cir. 1989). However, *evidence* presented by the non-movant must be believed and all justifiable inferences must be drawn in favor of the non-movant.[2] *Anderson*,

---

[2] "[W]hat is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

477 U.S. at 255. After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

### III. DISCUSSION

### A. FACTS

Viewed in the light most favorable to Adkison and drawing all reasonable inferences in her favor, the following facts are treated as undisputed for the purposes of summary judgment. Plaintiff Janet Adkison ("Adkison") who is white is engaged to Keith Sistrunk ("Sistrunk") who is African-American. They have lived together for over two years. (Pl's Dep. at 9). Sistrunk works at Sikorsky. (*Id*. at 47). Adkison found out that Sikorsky was hiring[3] so she applied at the unemployment office at the Career Center in Troy, Alabama.[4] (*Id*. at 50 & 53).

Sikorsky was seeking applicants for "Aircraft Manufacturing/Support Technicians." (Pl's Res. in Opp. to Mot. for Summ. J., Def's Ex. 3 attached to Dep. Janet Adkison). The general requirements of the position included:

> A high school diploma or GED is required. Mechanical aptitude, basic math skills, previous experience in manufacturing, production line, blueprint reading, sheet metal and aircraft manufacturing preferred, but not required for

---

[3] Adkison testified that she saw advertising on television and heard on the radio that Sikorsky was hiring. (Pl's Dep. at 50 & 53).

[4] The Career Center is referred to as AIDT in all the records.

4

training.

(*Id*.)

Adkison applied for employment on October 5, 2006. (Pl's Dep. at 61). After an interview, she was selected to attend the training program that was scheduled to begin on November 13, 2006. (*Id*. at 69-70). The training program required applicants to complete "60 hours of instruction in aircraft manufacturing skills for producing helicopters." (Ex. H, Aff. Kevin Taylor, at 2, ¶ 5, doc. #28). "Among the topics covered in the training program are orientation, basic math, measurements, blueprint reading, plant safety, tool and hardware familiarization and hands-on training shooting rivets." (*Id*.).

The eight week-long program held classes on Monday and Wednesday nights for four hours each night. (Def's Ex. 5 attached to Pl's Dep.). Twenty-five students, including Adkison, attended the program. (Def's Ex. 8 attached to Pl's Dep.). The first class was held on November 13, 200, and was a general orientation class. (Pl's Dep. at 74; Def's Mot. for Summ. J., Ex. J). Josh Downs ("Downs") taught the second class which was math. (*Id*. at 90 & 104; Def's Mot. for Summ. J., Ex. J). During the break that night, Adkison and Sistrunk sat together at a table in the break room. (Pl's Dep. at 107).

Although Adkison "didn't really notice him looking" at her, after the break she noticed a change in Downs' attitude. (*Id*.). "[H]is tone of voice [was] different" and he was sarcastic. (*Id.* at 105). Adkison concedes, however, that Downs' attitude was "not much" different and it was not "really that big of a deal." (*Id.* at 107 & 109).

5

On November 16, 2006, Adkison received a letter from Sikorsky conditionally offering her employment as a senior aircraft processor. (Def's Ex. 6 attached to Pl's Dep.)

> Your offer of employment is contingent upon satisfactory completion of our established employment requirements, which include: a personal history verification, medical history review, drug screening, *Intellectual Property* and *Code of Conduct* agreements, proof of your right to work in the United States and an Export Compliance Control Verification Form. You will be required to successfully complete the AIDT Training Course with the class you are currently enrolled in to maintain your employment with Sikorsky.

(*Id.*)

No classes were held during Thanksgiving week. (Pl's Dep. at 98-99). Class resumed on November 27, 2006 with shop tools and safety. (Def's Mot. for Summ. J., Ex. J). Blueprint reading was on November 29 and December 6, 2006 with precision measuring tools being taught on December 4, 2006. (Pl's Dep. at 98-99).

Downs taught the blueprint reading class on November 29, 2006 – the beginning of the end for Adkison. During a class break, the following transpired.

> That night when we went to break Keith was out there and I didn't have any money with me, any cash, and I asked him did he have any change so he gave me a dollar. When we walked in, Josh was standing at a drink machine talking to a guy. And me and Keith walked in, he looked at us. Keith sat down and his back was to Josh but I could see him and he was staring like – he looked like he was just mad. And the guy talking to him, I don't remember who it was, it was somebody in the class, and Josh didn't even look at him. He just kept his eyes on us and he was just like he was going to look through us like. And I got up and went to the drink machine. I got a Coke and sat back down, and he kept staring. And he looked – the way he was staring was like, you know, just he was mad.

(*Id.* at 110).

6

According to Adkison, after the staring incident in the break room, Downs treated her differently in class. (*Id*. at 133). "[E]very time I opened my mouth then to ask him something he would be smart. I finally just quit asking him anything." (*Id*.). He questioned whether she was taking notes and he suggested that she move to the front of the class.[5] (*Id*. at 133-34). She concedes that Downs did not single her out but when she asked a question, "he would be really smart." (*Id*. at 143).

On December 11 and 13, 2006, the class was on shooting and drilling rivets. (Def's Mot. for Summ. J., Ex. J). Adkison was at a table with three other women, Linda Loeffler ("Loeffler"), Mearlean Pritchett ("Pritchett") and Charlotte Carter ("Carter"). (Pl's Dep. at 162-63). Adkison was paired with Loeffler while Pritchett and Carter worked together. (*Id*.) The instructor, Benny Bagwell ("Bagwell"), spent more time at Adkison's table that night. (*Id*. at 171). Loeffler complained that Adkison was "pushing" too hard for her and "one time the little metal was kind of bowed instead of straight but nothing major." (*Id*. at 172). Adkison also asked whether they were "going to have to do [drill] our own holes or would they be predrilled." (*Id*. at 173). Nonetheless, Bagwell told Loeffler and Adkison that they were "doing real good." (*Id*. at 181).

After the second riveting class, on December 14, 2006, Adkison was terminated from the training program. She received a call from the Career Center informing her that the Center had been informed that Sikorsky would not consider Adkison for employment. (*Id*.

---

[5] Adkison did not move her seat because she was "fine" where she was. (*Id*. at 134).

7

at 182). According to Sikorsky, Adkison was terminated from the program because of "her technical skills." (Ex. H, Aff. Kevin Taylor, at 2, ¶ 6, doc. #28; Def's Mot. for Summ. J., Ex. T).

> [I]t became clear to her instructors that [Adkison] did not demonstrate an acceptable understanding of blue prints or of rivet installation, both key components of the newly offered job. The overall evaluation of the instructor was that she did not possess the skills essential to the position, and therefore, she should not be considered for employment.

(Def's Mot. for Summ. J., Ex. E at 12).

Adkison filed this action on February 11, 2008.

### B. RACE DISCRIMINATION CLAIM

This action is brought pursuant to 42 U.S.C. § 1981. Section 1981 provides, in pertinent part:

> (a) All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, . . .
>
> (b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981. Section 1981 "prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts." *Ferrill v. Parker Group,* 168 F.3d 468, 472 (11th Cir. 1999). Thus, section 1981 provides a cause of action for race-based employment discrimination, and the same prima facie elements are

required to prove a 42 U.S.C. § 1981 discrimination claim as are required to prove a Title VII discrimination claim. *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Brown v. American Honda Motor Co.,* 939 F.2d 946 (11th Cir. 1991).  The allocation of burdens and elements of a prima facie case are the same for employment claims stemming from Title VII and section 1981.  *See Richardson v. Leeds Police Dep't.,* 71 F.3d 801, 805 (11th Cir. 1995); *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir. 1994); *Howard v. BP Oil Co., Inc.,* 32 F.3d 520 (11th Cir. 1994).

In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against her.  *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  This Circuit has consistently held that federal courts, in resolving employment discrimination claims, do not review the accuracy of an employer's decision to terminate a plaintiff's employment.  *See e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1321 n.16 (11th Cir. 1998) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("Title VII is not a shield against harsh treatment at the workplace.")).

Adkison contends that Downs recommended that she be terminated from the mandatory pre-employment training program because of her relationship with Sistrunk, an African-American male. It has long been recognized in this circuit that section 1981 and Title VII prohibit discrimination based upon interracial marriage or association. *See Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 890 (11th Cir. 1986); *Kelser v. Alcazar*

*Shriners*, 2007 WL 484551 (M.D. Ala. Feb. 9, 2007) (No. 2:06-cv-818). To defeat the defendant's motion for summary judgment, Adkison must first establish a prima facie case of discrimination by one of three generally accepted methods: (1) presenting direct evidence of discriminatory intent; (2) presenting evidence to satisfy the four-part circumstantial evidence test set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) presenting statistical proof. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989).[6] Because Adkison has not presented any direct or statistical evidence supporting her claim of intentional discrimination, the court proceeds to examine the plaintiff's claim under the four-part circumstantial evidence test. *See Nix*, 738 F.2d at 1184 (noting that the *McDonnell Douglas* framework is a valuable tool for analyzing disparate treatment cases); *Edwards v. Wallace Cmty Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995).

Adkison argues that she has subjected to disparate treatment because she was dismissed from the training program while African-American applicants who were doing

---

[6] Direct evidence of employment discrimination consists of statements by a person with control over the employment decision "sufficient to prove discrimination without inference or presumption." *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993) (citing *Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir. 1989). The Eleventh Circuit has severely limited the type of language constituting direct evidence of discrimination. *See*, *e.g.*, *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 962 (11th Cir. 1997); *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 n.7 (11th Cir. 1997); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). This Circuit holds that a plaintiff presents direct evidence of discrimination where "actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641-42 (11th Cir. 1998); *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997). Adkison does not argue that there exists direct evidence of intentional discrimination in this case, nor has she presented any statistical evidence supporting her claims of intentional discrimination.

worse than her in class, were not removed.[7] To establish a prima facie case of disparate treatment, Adkison must show that there were applicants who were similarly situated to her but were treated more favorably than her.[8] *See Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). The parties do not dispute that Adkison was dismissed from the mandatory preemployment training program while African-American applicants were not. Consequently, the dispositive issue for the court is whether there were similarly situated applicants who were equally lacking or worse in skills and ability than Adkison but received better or more favorable treatment than her. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998) *modified by*, 151 F.3d 1321 (11th Cir. 1998)).[9] The question of whether the plaintiff is similarly situated with other employees

---

[7] As stated by the plaintiff, her claim is as follows:

> Thirdly, Plaintiff was treated differently than similarly-situated employees (or in the instant case, similarly-situated trainees). The Defendant's brief points out that there were two other females who were doing worse than Plaintiff in the case, and those females were African-American. Defendant further states that not only did Mr. Downs not dismiss them from the class, but Defendant subsequently hired them after they completed the training class.

(Pl's Br. in Opp. to Def's Mot. for Summ. J. at 17).

[8] It is not necessary for Adkison to demonstrate that she is a member of a protected class because this general prima facie requirement is inapplicable to a discrimination claim based on interracial association. "Where a plaintiff claims discrimination based upon an interracial marriage or association, [s]he alleges, by definition, that [s]he has been discriminated against because of [*her*] race. It makes no difference whether the plaintiff specifically alleges in [her] complaint that [s]he has been discriminated against because of [*her*] race." *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986).

[9] The part of this opinion dealing with the establishment of a prima facie case by circumstantial evidence was not superceded by *Jones v. Bessemer Carraway Med. Ctr.,* 151 F.3d 1321 (11th Cir. 1998). Only the part of the Court's opinion regarding direct evidence was superceded.

is critical. *See Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1168 (11th Cir. 1988) (citing *Kendall v. Block*, 821 F.2d 1142 (5th Cir. 1987)).[10]

It is Adkison's burden to prove that a similarly situated person received better or more favorable treatment. *See e.g., Holifield,* 115 F.3d at 1565. In applying this standard, an allegation of a similarly-situated comparator, without an adequate showing that the plaintiff is similarly situated, fails to establish a prima facie case of employment discrimination. *Malladi v. Brown*, 987 F. Supp. 893, 909-910 (M.D. Ala. 1997) *aff'd by United States v Ponder*, 150 F.3d 1197 (11th Cir. 1998).

Adkison alleges that she is similarly situated to the two African-American applicants in the training program – Mearlean Pritchett and Charlotte Carter.[11] Adkison complains that she was dismissed from the training program while Pritchett and Carter, who were "as bad" as her, were not. After careful review, the court concludes that Adkison's evidentiary submission does not create a genuine issue of material fact about whether she was similarly situated to either Pritchett or Carter.

Although Adkison alleges that Pritchett and Carter performed "worse" than her in riveting class, she offers no *facts* from which the court could conclude that her performance was the same or better than Pritchett or Carter's. Her own unsubstantiated opinion she was

---

[10] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[11] Although Adkison does not name these two applicants, the court culled their identities from the evidentiary submissions in support of and in opposition to the motion for summary judgment.

a better student than either Pritchett and Carter is not an appropriate proxy for evidence. The mere fact that Bagwell told Sistruck that Adkison "had some trouble like others but that she was decent and fair" in his classes is insufficient to create a genuine issue of material fact. Bagwell conceded that Adkison was near the bottom of the class and that there was only one other employee worse than her. (*Id*. 23-24).

The only evidence that tends to demonstrate that Adkison was similarly situated to Pritchett and Carter is Bagwell's testimony that the three applicants had more difficulty with the "hands-on" portion of the classes than other applicants, and that they all struggled with riveting. (Def's Mot. for Summ. J., Ex. K, Dep. Bagwell at 11 & 33-34). It is undisputed that the ability to shoot rivets was "very important" to Sikorsky. (*Id*. at 34).

> That's really the main – Every job on the floor, you know, will have that into it. You have to be able to do that and take them out, you know, drill them out. You have to be able to operate a drill pretty efficiently.

(*Id*.)

However, this evidence is insufficient to defeat summary judgment. Other undisputed evidence in the record demonstrates that Adkison had deficiencies beyond riveting. Adkison had difficulty with basic math and grasping general concepts. (Def's Mot. for Summ. J., Ex. N at 1, ¶ 3). She also had "little experience with power tools." (*Id*.). There is no evidence before the court that Pritchett or Carter had difficulty with basic concepts or math. Moreover, the record is absolutely silent as to whether Pritchett and Carter had experience using power tools.

Adkison's interactions with Downs in different classes militates against a finding that she was similarly situated to Pritchett or Carter. For example, prior to being dismissed, Downs advised Adkison to cut her fingernails. (*Id*.). Adkison flatly rejected that suggestion. She refused to cut her nails even after Downs told her that her artificial nails would make it difficult for her to work with the requisite power tools of the job. (Def's Mot. for Summ. J., Ex. K at 12). "[I]t was mentioned, you know, that nails would be a hindrance and it's not the place, you know, for that." (*Id*.). Downs told Adkison that her nails "would be in the way," but Adkison replied that "they were staying." (*Id*. at 30-32). According to Loeffler, Adkison said "oh, no, I don't cut my fingernails. I've always had these." (Def's Mot. for Summ. J., Ex. M at 12). Adkison does not suggest, and there is no evidence before the court, that either Pritchett or Carter had fingernails that matched Adkison's in length or that their nails were an issue during any of the training classes, particularly the riveting class.

Downs also taught the blueprint reading class which was "pretty important, too, because you have to be able to tell what you're looking at and what to do, how many fasteners go in, what type of fasteners. It's something that you have to be able to do, too." (Def's Mot. for Summ. J., Ex. K, Dep. Bagwell at 35). In one of Downs' classes, Adkison asked at least one question that Downs thought "was sort of not a smart question." (*Id*. at 35). It is undisputed that Downs recommended Adkison not be hired because "he didn't feel like she was going to cut it." (*Id*. at 27). There is no evidence before the court that either Pritchett or Carter asked questions that led Downs to question their ability to perform the job.

14

In sum, the evidence shows that Adkison had difficulty with general concepts and math, struggled with riveting and operating power tools, asked questions that led an instructor to question her abilities and rejected suggestions by the same instructor designed to help her succeed in the class, i.e., to move to the front of the class or cut her nails. By comparison, there is no evidence before the court that Pritchett or Carter had difficulty with math or other general concepts or that their experience with power tools was similarly lacking. The evidence does not demonstrate that either Pritchett or Carter asked questions or rejected suggestions from an instructor. Consequently, the court concludes that Adkison has failed to demonstrate that she was similarly situated to either Pritchett or Carter, and thus, they are not proper comparators to her. The court further concludes that Adkison has failed to demonstrate a prima facie case of discrimination under the disparate treatment theory because she has failed to demonstrate that she is similarly situated to comparators who were treated more favorably than her.

More importantly, however, Adkison has come forward with no evidence to suggest that she was removed from the training program because she was involved in an interracial relationship with Sistrunk. Her reason for believing that her removal from the training program was based on racial animus rests on rank speculation.

> Q:   Would I be correct that the only reason that you believe [Downs] treated you the way he did is because you were in a relationship with an African-American employee, the only reason you think that is because of him looking at the two of you that night in the breakroom?
>
> A:   Basically, that's what I think because I saw the way he looked at us.

15

(Pl's Dep. at 138-39).

By her own admission, the break room was crowded that night. (*Id*. at 121). She offers no admissible evidence that Downs knew that she and Sistrunk were dating.[12] Her own unsubstantiated opinion that Downs' decision to recommend her removal was somehow motivated by her relationship with Sistrunk is simply insufficient to defeat summary judgment.

Adkison presents no *facts* from which the court could conclude that her dismissal from the training program was due to her relationship with Sistrunk or that Downs' recommendation was motivated by racial animus. Adkison asserts that

> Downs more likely than not thought the two [African American] women were lazy but that apparently is not enough to incite him to discriminate against hiring them. But the interracial relationship was a step too far for Mr. Downs, as evidenced by his glaring stare toward Plaintiff and her boyfriend as they sat in the break room. It was evidenced by his snide and curt attitude that he displayed towards Plaintiff in the classroom in front of all the trainees afer he discovered the interracial relationship. It was evidenced by the fact that he did not even bother to discuss Plaintiff's dismissal with the other instructors – he made this decision on his own – even though Plaintiff was not the worst trainee in the class. It is true he did not dismiss the African American women who were not doing as well as the Plaintiff, but Plaintiff was dismissed because she dared to have an interracial relationship with an African American man and **that** was the reason that Plaintiff was treated differently than anyone else similarly-situated in the class.

---

[12] Adkison seeks to rely on Sanders' deposition testimony to establish that Downs knew that Adkison and Sistrunk were dating. Her reliance is misplaced. Sanders testified that Downs asked him to identify Sistrunk and then Downs asked if Adkison and Sistrunk dated. Sanders replied that he thought Adkison was Sistrunk's girlfriend. This hearsay evidence is simply inconsistent with the requirements of Fed. R. Civ. P. 56(e). Thus, Adkison's reliance on this inadmissible hearsay evidence does not create a factual issue regarding Downs' knowledge about her relationship with Sistrunk.

(Pl's Br. in Opp. to Def's Mot. for Summ. J. at 18) (emphasis in the original).[13]

Adkison's self-serving rhetoric, with no attendant facts, is simply insufficient to defeat summary judgment. Adkison offers no evidence, other than her own speculative opinion, that her removal are motivated by race discrimination. She cannot rely on her own unsubstantiated opinion that the decision was somehow motivated by an improper motive. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). *See e.g.*, *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value); *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."). The plaintiff has simply failed to come forward with any evidence that she was treated differently because of her interracial relationship or that her removal from the training program was based on improper motives.

> The law does not require, nor could it ever realistically require, employers to treat all of their employees all of the time in all matters with absolute, antiseptic, hindsight equality. What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992).

---

[13] Adkison cannot rely on Sanders' deposition testimony that Downs made statements that African Americans were lazy and lacked work ethics as this hearsay evidence is again inconsistent with the requirements of FED. R. CIV. P. 56(e), and inadmissible.

While the plaintiff may disagree that her performance warranted termination, the court does not examine the reasonableness of the action. *Abel v. Dubberly*, 210 F.3d 1334, 1339 n. 5 (11th Cir. 2000) ("Although termination may, to some, seem a draconian response given the level of the Plaintiff's offense, the reasonableness of [the defendant's] disciplinary policies are not a consideration."). Regardless of whether Adkison believes that she should have been given more opportunity to master the necessary skills, she has presented no evidence that the decision to remove her from the training program was racially motivated. In fact, Adkison points the court to no evidence that suggests that Downs was biased against African-American employees in general, or Adkison in particular, because she was involved in a relationship with Sistrunk. (Def's Mot. for Summ. J., Ex. K at 36-37).

While section § 1981 prohibits discrimination, it is not a shield against harsh treatment at the work place. *See Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981). For the reasons stated, the court concludes that the plaintiff has failed to demonstrate a prima facie case of discrimination under the disparate treatment theory because she has failed to demonstrate that she was similarly situated to others who were treated more favorably than she. *See Holifield*, 115 F.3d at 1562 (holding that, if a plaintiff cannot show there was a similarly situated employee, "summary judgment is appropriate where no other evidence of discrimination is present"). Consequently, the defendant is entitled to summary judgment on her claim of racial discrimination.

## IV. CONCLUSION

Accordingly, it is

ORDERED and ADJUDGED as follows:

1. That the defendant's motion for summary judgment be and is hereby GRANTED;

2. That the plaintiff's claims be and are hereby DISMISSED with prejudice;

3. That all pending deadlines are terminated and all pending motions are hereby DENIED as moot; and

4. That costs of this proceeding be and are hereby taxed against the plaintiff.

A separate judgement will issue.

Done this 24th day of April, 2009.


    /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE